O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>SHOESCANDAL.COM, LLC, a Nevada Limited Liability Company; and DOES 1–10, inclusive,<br><br>　　　　　Defendants. | Case No. CV 12-7382 ODW (SHx)<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST FOR AWARD OF DAMAGES IN DEFAULT JUDGMENT [28]** |

## I.   INTRODUCTION

On August 7, 2013, the Court entered default judgment as to liability against Defendant ShoeScandal.com, LLC. (ECF No. 27.) The Court denied the initial request for damages because Deckers Outdoor Corporation's submitted evidence of ShoeScandal's profits was too speculative. (*Id.*) Deckers filed a renewed request for an award of damages under 35 U.S.C. § 289 August 23, 2013 (ECF No. 28.) In light of Deckers's supplemental evidence regarding typical industry profits, the Court **GRANTS** Deckers's Request for Damages.[1]

///

---

[1] The Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

On August 28, 2012, Deckers sued ShoeScandal for patent infringement and unfair competition regarding the purchase and sale of goods with designs nearly identical to Deckers's federally-registered design patents. (ECF No. 1.) Deckers holds multiple design patents for its famous UGG® Australia line of footwear. Defendant ShoeScandal.com advertises, offers for sale, and sells shoes through its online store www.shoescandal.com. (Compl. ¶ 13.) An image comparison is provided below. (*See* Compl. ¶ 14.)



**Ugg Design Patent No. D599,999**



**Defendant's Infringing Product**



**Ugg Design Patent No. D616,189**



**Defendant's Infringing Product**

On October 15, 2012, the Clerk of Court entered default against ShoeScandal under Federal Rule of Civil Procedure 55(a). (ECF No. 13.) Following entry of default, Deckers filed an Application for Default Judgment seeking injunctive relief and an award of $500,000.00, in addition to costs and post-judgment interest. (ECF No. 25.) On August 7, 2013, the Court granted Deckers's Application with respect to

liability, costs, and injunctive relief, but denied Deckers's request for damages without prejudice. (ECF No. 27.)

The Court denied the damages request because Deckers failed to adequately prove its damages. (*Id.*) Rather than seek damages in the form of a reasonable-royalty under § 284, Deckers sought ShoeScandal's profits from the sale of the infringing products under § 289. (ECF No. 25.) But because ShoeScandal failed to appear in this action, Deckers sought to prove ShoeScandal's profits through an invoice produced by Ollie's Bargain Outlet—a retailer to whom ShoeScandal allegedly sold the infringing boots in an unrelated action pending in the Southern District of New York. (*Id.*; Chan Decl. ¶ 7.) Deckers improperly equated ShoeScandal's total "earned revenue" with its total profits in its request.

On August 23, 2013, Deckers renewed its request for damages. (ECF No. 33.) Deckers sought $230,000.00 in damages, again based on ShoeScandal's sales of the infringing boots to Ollie's Bargain Outlet. (*Id.*) Deckers noted that Ollie's Bargain Outlet's invoice reflected that ShoeScandal sold at least 39,780 units of the infringing boots and earned revenues in the amount of $238,282.20. (*Id.*) But although Deckers decreased the requested damages amount, Deckers did not provide the Court with any evidence of ShoeScandal's profits. Instead, Deckers requested 50 percent of ShoeScandal's gross revenues. (*Id.*) The Court issued an Order for supplemental briefing on September 26, 2013, requesting that Deckers provide some evidence of ShoeScandal's profits. (ECF No. 37.) On October 25, 2013, Deckers responded to the Court's Order by filing a declaration from Nellie Poole, Deckers's Vice President of Supply Chain. (ECF No. 38.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered;

(3) whether the defaulting party is a minor, incompetent person, or active servicemember; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

But a Plaintiff must prove all damages sought in the complaint. *Phillip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). If the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *Cripps v. Life Ins. Co. of N. America,* 980 F.2d 1261, 1267 (9th Cir. 1992). Fundamental fairness, required by due process of law, limits the scope of relief. U.S. Const. amend. XIV.

## IV. DISCUSSION

In the Renewed Request for Award of Damage in Default Judgment, Deckers seeks judgment in the sum of $258,270.05 in statutory damages, reasonable attorneys' fees in accordance with Local Rule 55-3, and prejudgment interest, as well as costs and postjudgment interest. (ECF No. 33.) The Court considers each in turn.

**A.  Statutory Damages**

Deckers first seeks a statutory-damages award of $119,141.10—which reflects a presumed 50 percent profit by ShoeScandal on its $238,282.20 sales to Ollie's Bargain Outlet. This presumed profit is based upon the typical profit margin for footwear distributors of 40–50 percent. (Poole Decl. ¶¶ 5–6.) Under 35 U.S.C. § 284, a design-patent patentee may recover compensatory damages from the infringer, but in no event less than a reasonable royalty. Alternatively, the patentee may elect to recover the infringer's total profits (but no less than $250) under 35 U.S.C. § 289. And when only a design patent is at issue, a patentee may not recover both infringer

profits under § 289 and additional damages, such as a reasonable royalty, under § 284. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed Cir. 2002).

Rather than seek damages under § 284, Deckers seeks ShoeScandal's profits from the sale of the infringing products under § 289. (Mot. 3.) Under normal circumstances, it is the infringer who bears the burden of "offering a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items in issue." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004) *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005). But if the infringer has failed to produce any evidence—as in the default action at hand—the Court must determine the costs to be subtracted from revenue based on the evidence it has to determine profits. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998).

ShoeScandal has not responded to, nor produced any discovery in, this action, so Deckers has limited information regarding ShoeScandal's sales and profits. The invoice produced by Ollie's Bargain Outlet shows that ShoeScandal has sold at least 39,780 units of the infringing products, resulting in $238,282.20 in sales to Ollie's alone. (Poole Decl. ¶ 6.) But ShoeScandal's total *sales* are not its total *profits*. In arriving at ShoeScandal's total-profit figure under § 289, Deckers cannot look solely to ShoeScandal's gross sales figures. Rather, it must subtract from the gross sales all of ShoeScandal's direct and indirect expenses. *See Nike,* 138 F.3d at 1447.

The Court finds evidence of the typical profit margin in the footwear industry sufficient for an award of damages on default. The ascertainment of the amount of damages is not certain, but it would be fundamentally unfair to deny all relief to Deckers. "The wrongdoer is not entitled to complain that [the damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." However, the Court declines to grant the statutory damages as requested. The Court must balance the concern of fairness to an absent party against the risk that minimizing damages would motivate

infringing parties to simply ignore infringement complaints. Instead the Court finds a statutory award of **$107,226.99**—based on a 45 percent profit margin—reasonable in this case. A profit margin of 45 percent represents an average of the 40–50 percent profit margin typical in the industry and adequately balances fairness and deterrence. (Poole Decl. ¶¶ 5–6.)

### B.   Attorney's Fees and Costs

Deckers also requests an award of reasonable attorneys' fees under § 285. Under § 285, the Court must first determine that a case is "exceptional" and then it may exercise its discretion to award fees to the prevailing party. The standard for determining whether a case is exceptional under § 285 is set forth in *Brooks Furniture Manufacturing, Inc. v. Dutailier International Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). There, the Federal Circuit held that an award of attorneys' fees is permissible "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks*, 393 F.3d at 1381. Indeed, the Federal Circuit has stated that attorneys' fees should be awarded "only when it would be unjust not to make such an award." *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 692 (Fed. Cir. 1984). Thus, a court must predicate an attorneys'-fees award on something beyond the mere fact that the patentee has prevailed.

Here, Deckers alleged that ShoeScandal sold and offered for sale the infringing shoes "knowingly and intentionally," and that this conduct "constitute[d] willful acts and intentional infringement." (Compl. ¶¶ 19, 23.) Deckers further asserts that, by failing to respond to its Complaint, ShoeScandal is deemed to have admitted that it willfully infringed Deckers's design patent. But the fact that a default judgment was entered against ShoeScandal does not alone make this case exceptional—despite the default finding of willfulness. *Accord Telequip Corp. v. The Change Exch.*, No. 5:01-CV-1748, 2007 WL 655734, at *2 (N.D.N.Y. Feb. 26, 2007) (denying patentee's

motion for attorneys' fees and noting that "neither willful infringement nor defaults are unusual in patent-infringement cases."); *Cequent Trailer Prods., Inc. v. Intradin (Shanghai) Mach. Co., Ltd.*, No. 1:05-CV-2566, 2007 WL 438140, at *11 (N.D. Ohio Feb. 7, 2007) (awarding treble damages for willful infringement but refusing to award attorneys' fees on default).

Courts have awarded attorneys' fees under 35 U.S.C. § 285 for willful infringement. *Nat'l Gypsum Co. v. Steel Sys. Int'l, Inc.*, 696 F. Supp. 1379 (D. Or. 1988); C*haparral Indus., Inc. v. Boman Indus., Inc.*, 697 F. Supp. 1113 (C.D. Cal. 1988). And such an award has been upheld by the Federal Circuit. *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075 (Fed. Cir. 1987). But although a finding of willful infringement is a sufficient basis for finding a case exceptional, it does not compel such a finding. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000); *Jurgens v. CBK, Ltd.*, 80 F .3d 1566, 1572 (Fed. Cir. 1996); *Avia Group Intern., Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988)..

The bare default finding of willful infringement is insufficient evidence of exceptional circumstances to warrant an attorneys'-fees award. Attorneys' fees are not awarded as a matter of course, and should not be permitted in the ordinary, typical patent suit. Neither default judgments nor willful infringement are uncommon in patent-infringement cases. The Court is not willing to categorize a default finding of willfulness as exceptional without some additional extraordinary circumstances plead in the complaint. An attorneys'-fees award should be premised upon a finding of unfairness, bad faith, or other equitable consideration of similar force that makes it grossly unjust that the prevailing party be left to bear the burden of its counsel's fees. Deckers's complaint does not allege such circumstances here.

This is not to say that the Court condones ShoeScandal's actions—it intentionally failed to participate in this action. But although ShoeScandal is

blameworthy for its failure to file responsive pleadings, this is not sufficiently exceptional to warrant an attorneys'-fees award.

Deckers is entitled to recover the costs incurred in litigating this action "upon finding for the claimant." 35 U.S.C. § 284. Accordingly, the Court **GRANTS** Deckers's request for costs, subject to proof in an application to tax costs under Local Rule 54-2.1.

### C. Pre- and Post-Judgment Interest

It is within the Court's discretion to award pre-judgment interest in design-patent infringement actions. *See Catalina Lighting,* 295 F.3d at 1292. Under 28 U.S.C. § 1961(a), "interest shall be allowed on any money judgment in a civil case recovered in a district court." Absent substantial evidence that a different pre-judgment interest rate is appropriate, the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961. *U.S. v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir. 2004); *see also Blanton v. Anzalone (II)*, 813 F.2d 1574, 1576 (9th Cir.1987); *Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*, CV 03-992 AJW, 2010 WL 2132378, at *2 (C.D. Cal. May 24, 2010). The Treasury Bill rate is equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment as the appropriate rate for interest. 28 U.S.C. § 1961(a). The Court therefore awards Deckers **$14,913.22** in pre-judgment interest from June 25, 2012, through November 20, 2013.[2]

Deckers is entitled to post-judgment interest on their monetary award under 28 U.S.C. § 1961(a). Further, interest is computed daily until the date of payment. *Id.* § 1961(b). The Court therefore awards Deckers post-judgment interest at a rate of 9.8 percent from November 21, 2013, until the date of payment.

---

[2] $((\$107{,}226.99 \times .098) \div 365) \times 518) = \$14{,}913.22$
The average 52-week Treasury rate for the week preceding judgment is 9.8%. Principal Amount Due is $107,226.99. The daily interest $((\$107{,}226.99 \times 0.098) \div 365)$ is $28.79. Interest accrued from June 25, 2012, to November 25, 2013, ($28.79 \times 518$ days) is equal to $14,913.22.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Deckers's Renewed Request for an Award of Damages in Default Judgment and awards Deckers a total amount of **$122,140.21**. The Court also awards Deckers post-judgment interest at a rate of 9.8 percent from November 26, 2013, until the date of payment. Under Local Rule 54-2.1 Deckers has fourteen days from the date of this order to submit a bill of cost. A default judgment will issue.

**IT IS SO ORDERED.**

November 25, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**